UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENJAMIN ALVARADO,

       Plaintiff,

v.                           Case No. 8:14-cv-447-T-33TGW

CREDIT PROTECTION
ASSOCIATION, L.P.,

       Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Credit Protection Association, L.P.'s Amended Motion for Summary Judgment (Doc. # 34), filed on February 5, 2015, and Plaintiff Benjamin Alvarado's Motion for Partial Summary Judgment (Doc. # 37), filed on February 6, 2015. Both Motions are ripe for this Court's review. For the reasons that follow, both Motions are denied.

**I.   Background**

On May 13, 2012, Plaintiff contacted Bright House to set up internet and phone services at his personal residence in Riverview, Florida. (Doc. # 34-2 at 2; Doc. # 42-2 at 7). At that time, Plaintiff provided Bright House with information in connection with the application process, which included his cellular telephone number. (Doc. # 42-2 at 13; Doc. # 42-

4 at 40). This number is listed on Bright House's records as the contact number for Plaintiff's Bright House account. (Doc. # 34-2 at 2).

On May 15, 2012, a Bright House technician went to Plaintiff's residence to connect internet and phone services for the account. (Id.). After connecting the services, the technician presented Plaintiff with a work order, which Plaintiff signed. (Doc. # 42-4 at 53, 69). The work order lists Plaintiff's cellular telephone number as the account contact number. (Id.).

The Bright House account was terminated in December of 2012, with an outstanding balance owed by Plaintiff, which Plaintiff does not dispute. (Doc. # 42-2 at 16-17). On December 31, 2012, Bright House forwarded Plaintiff's unpaid account balance to Defendant for collection purposes and provided Defendant with Plaintiff's cellular telephone number as the contact number for the account. (Doc. # 42-3 at 1).

Beginning in January of 2013, Defendant placed several calls to Plaintiff's cellular telephone in connection with the unpaid Bright House account (Doc. # 42-3 at 2; Doc. # 42-4 at 8-9, 36; Doc. # 44-3 at 3); however, all of Defendant's calls went unanswered (Doc. # 42-3 at 2). In fact, Plaintiff has never directly communicated with Defendant, either orally

or in writing. (Doc. # 42-2 at 18-21; Doc. # 42-3 at 2). Rather, each time Defendant called Plaintiff's cellular telephone, Defendant left a voicemail for Plaintiff. (Doc. # 42-3 at 2).

On September 24, 2013, Plaintiff's attorney sent a pre-suit letter to Defendant setting forth Plaintiff's position that Defendant was violating the law in its attempts to collect an alleged debt from Plaintiff. (Doc. # 42-2 at 30; see Doc. # 42-1). The pre-suit letter contained the following information: Plaintiff's name and the name, address, telephone number, and e-mail address of Plaintiff's attorney. (Doc. # 42-1). However, the pre-suit letter was devoid of the following information: Plaintiff's address, cellular telephone number, account reference number, or any mention of a particular debt. (Id.; Doc. # 42-2 at 32-36). Attached to the pre-suit letter was a partial draft complaint, which set forth alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA"). (Doc. # 44-6). Defendant received the pre-suit letter on September 27, 2013. (Doc. # 44-3 at 6).

It was not until October 9, 2013, that Defendant made a notation on Plaintiff's account regarding the representation, which consequently shut down Defendant's collection efforts.

(Doc. # 42-4 at 58). However, in the interim between the time Defendant received the pre-suit letter and the time it ceased all collection activities on Plaintiff's account, five calls were made to Plaintiff's cellular telephone regarding collection of the relevant debt. (Id. at 59).

Plaintiff initiated this action on February 21, 2014, alleging the following counts:

1. Count I – communicating with a represented consumer in violation of the FDCPA, 15 U.S.C. § 1692c(a)(2);

2. Count II – failure to make meaningful disclosure of identity in violation of the FDCPA, 15 U.S.C. § 1692d(6);

3. Count III – failure to disclose status as debt collector in violation of the FDCPA, 15 U.S.C. § 1692e(11);

4. Count IV – communicating with a represented consumer in violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72(18); and

5. Count V – automated or pre-recorded calls to Plaintiff's cellular telephone in violation of the TCPA, 47 U.S.C. § 227 (b)(1)(A)(iii).

(See Doc. # 1). Defendant filed its Amended Motion for Summary Judgment on February 5, 2015 (Doc. # 34), and Plaintiff filed his Motion for Partial Summary Judgment on February 6, 2015 (Doc. # 37). Both Motions are ripe for this Court's review.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,'

5

designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## III. **Analysis**

Plaintiff's Motion seeks judgment in favor of Plaintiff as to Counts I, II, and IV of the Complaint, and partial judgment as to Count V. (See Doc. # 37). Defendant's Motion

seeks judgment in favor of Defendant on all Counts set forth in the Complaint. (See Doc. # 34). The Court will address each Count in turn.

### A. Count I – 15 U.S.C. § 1692c(a)(2)

To prevail on an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002)(quoting Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)).

#### 1. Collection Activity Arising from a Consumer Debt

The determination of whether Plaintiff has been the object of a collection activity arising from a consumer debt has two requirements. Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011). First, there must be collection activity. Id. Second, this activity must relate to a consumer debt. Id. Each requirement is discussed below, starting with collection activity.

The "FDCPA does not expressly define 'collection activity.'" LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 n.15 (11th Cir. 2010). Nonetheless, "[w]hile the statute

7

contains no clear definition of what constitutes a debt collection activity, courts, in attempting to effect the purpose of the FDCPA, are lenient with its application." *Sanz v. Fernandez*, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009)(internal quotation omitted). According to the Complaint, Defendant made numerous telephone calls to Plaintiff regarding the repayment of an alleged debt. (*See* Doc. # 1). Defendant does not dispute this allegation. (*See* Doc. # 42). Therefore, this Court finds that these telephonic communications, which were directed at collecting a debt, constitute collection activity.

The Court next turns to whether the collection activity was aimed at collecting a consumer debt. Pursuant to 15 U.S.C. § 1692a(5), a debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is] primarily for personal, family, or household purposes." Thus, the FDCPA is limited to "consumer debt," *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995), and does not cover business debts, *Lingo v. City of Albany Department of Community & Economic Development*, 195 F. App'x 891, 893 (11th Cir. 2006). Here, Plaintiff alleges that the "alleged debt that Defendant was attempting to collect from [Plaintiff] was incurred primarily for personal or household purposes." (Doc.

8

# 44-3). Defendant does not dispute this allegation. (See Doc. # 42). Thus, the Court finds that the relevant collection activity by Defendant was aimed at collecting a consumer debt.

## 2. Debt Collector

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." See 15 U.S.C. § 1692a(6). Defendant previously admitted that it "is a 'debt collector' as that term is defined by the FDCPA and/or FCCPA in many instances and for many purposes." (See Doc. # 6). Furthermore, in his Motion, Plaintiff submits that "Defendant admitted to placing telephone calls and mailing letters to Plaintiff in an attempt to collect the Bright House Networks debt." (Doc. # 37 at 7). In its response, Defendant does not dispute this allegation. (See Doc. # 42). Therefore, the Court finds that Defendant is a debt collector.

## 3. Violation of 15 U.S.C. § 1692c(a)(2)

In Count I, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692c(a)(2), which provides:

(a) Communication with the consumer generally

> Without the prior consent of the consumer given
> directly to the debt collector or the express
> permission of a court of competent jurisdiction, a
> debt collector may not communicate with a consumer
> in connection with the collection of any debt –
>
> * * *
>
> (2) if the debt collector knows the consumer is
> represented by an attorney with respect to such
> debt and has knowledge of, or can readily
> ascertain, such attorney's name and address, unless
> the attorney fails to respond within a reasonable
> period of time to a communication from the debt
> collector or unless the attorney consents to direct
> communication with the consumer. . . .

On September 27, 2013, Defendant received a pre-suit letter from Plaintiff's counsel, which stated, in relevant part:

> This firm represents Mr. Benjamin Alvarado
> with respect to the above-referenced matter. Your
> company contacted Mr. Alvarado in an attempt to
> collect a debt. In doing so, your company violated
> the Fair Debt Collection Practices Act, 15 U.S.C.
> § 1692 *et seq*. ("FDCPA") and the Telephone Consumer
> Protection Act, 42 U.S.C. § 227 *et seq*. ("TCPA").
> Given the clear liability and damages in this case,
> this firm intends to enforce our client's rights by
> seeking an award of monetary damages and attorney's
> fees in the United States District Court of the
> Middle District of Florida.

(See Doc. # 42-1; Doc. # 44-3 at 6). However, between the time Defendant received the pre-suit letter and the time it

made a notation on Plaintiff's account regarding the representation – on October 9, 2013 - Defendant placed five calls to Plaintiff's cellular telephone. (Doc. # 42-4 at 59).

Precedent, as well as the plain statutory language, explains that Count I requires Plaintiff to prove that Defendant had *actual knowledge* that Plaintiff was represented by counsel. See, e.g., Erickson v. Gen. Elec. Co., 854 F. Supp. 2d 1178, 1182 (M.D. Fla. Feb. 23, 2012) ("actual knowledge is an element necessary to prove violations of FDCPA § 1692c(a)(2). . . ."). Upon review, the Court finds that a dispute as to material fact exists regarding whether Defendant had the requisite knowledge when it called Plaintiff five times after receiving the pre-suit letter.

Defendant contends that Plaintiff's pre-suit letter failed to put it on notice that Plaintiff was represented by an attorney "with respect to such debt." (Doc. # 34 at 19-20). Namely, Defendant argues that the pre-suit letter failed to identify the Bright House debt or provide an account reference number, and was further devoid of sufficient personal identifying information to allow Defendant to identify Plaintiff or the Bright House account. (Id. at 20). Instead, Defendant submits that the pre-suit letter is a "confidential communication offering to settle Plaintiff's

11

alleged claims under the FDCPA and TCPA, and threatening to file a lawsuit if a settlement cannot be reached." (Id.)(citing Udell v. Kan. Counselors, Inc., 313 F. Supp. 2d 1135 (D. Kan. 2004)). Therefore, Defendant argues that it is entitled to summary judgment as to Count I.

Plaintiff admits that, at the time the pre-suit letter was sent to Defendant, he did not know that Defendant was contacting him regarding the Bright House debt and, therefore, the pre-suit letter failed to reference that account. (Doc. # 42-2 at 23, 58; Doc. # 44-3 at 6). Plaintiff submits, however, that this lack of information was because "Defendant did not include that information [i.e., the Bright House account]" in its prerecorded voicemails, so Plaintiff did not know why Defendant was calling Plaintiff until after this lawsuit was filed. (Doc. # 42-2 at 58; Doc. # 37 at 10).

Regardless, Plaintiff contends that the pre-suit letter "clearly identifies the Plaintiff and was clearly sent in response to Defendant's attempts to collect an alleged debt from Plaintiff." (Doc. # 37 at 10). Specifically, the pre-suit letter stated: "This firm represents Mr. Benjamin Alvarado with respect to the above-referenced matter. Your company contacted Mr. Alvarado in an attempt to collect a debt." (See Doc. # 42-1). Therefore, Plaintiff posits that

12

the pre-suit letter was sufficient to give Defendant "notice" that Plaintiff was represented by counsel when the telephone calls were made. (Doc. # 37 at 11; Doc. # 44 at 18).

From the differing positions set forth above, a reasonable fact-finder could conclude that the language contained in the pre-suit letter was or was not sufficient to provide Defendant with actual knowledge that Plaintiff was represented by counsel when Defendant called Plaintiff's cellular telephone after receipt of the pre-suit letter. Thus, the Court finds that the determination of this element is one of fact, which is not suitable for disposition on summary judgment.

### 4. **Applicability of the Bona Fide Error Defense**

For completeness of the record, the Court will assume that Defendant had the requisite knowledge, and as a result, will address whether Defendant is entitled to summary judgment based on the bona fide error defense. This defense "insulates" debt collectors from liability "even when they have failed to comply with the [FDCPA's] strict requirements." Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1352 (11th Cir. 2009). Pursuant to 15 U.S.C. § 1692k(c):

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

A defendant asserting the bona fide error defense must show its violation of the FDCPA: (1) was unintentional; (2) was a bona fide error; and (3) occurred despite the existence of procedures reasonably adapted to avoid violations of the FDCPA. Edwards, 584 F.3d at 1353. In the Eleventh Circuit, the procedures portion of the test involves a two-step inquiry. Owen v. IC Sys., Inc., 629 F. 3d 1263, 1274 (11th Cir. 2011). "The first step is whether the debt collector maintained – i.e., actually employed or implemented - procedures to avoid errors." Id. at 1274 (internal quotation omitted). "The second step is whether the procedures were reasonably adapted to avoid the specific error at issue." Id. (internal quotation omitted).

Defendant contends that it maintains policies and procedures to code accounts once cease-and-desist letters are received so that no further communications are sent in violation of 15 U.S.C. § 1692c(a)(2), that employees are trained in the procedures, and that the procedures were

followed in the instant case. (Doc. # 34 at 21; Doc. # 42 at 13). Specifically, Defendant has the following written policy:

> If a debtor is being represented by an attorney, we need that claim substantiated. Acceptable means of proof would include:
>
> 1. A phone call from the representing attorney.
>
> 2. A letter (faxed or mailed) from the representing attorney stating that he/she is representing the debtor in this matter.
>
> Once we have an indication that the debtor is being represented by an attorney the [Customer Service Representative] needs to check with management before making another contact.

(Doc. # 37, Exh. M at 33; Doc. # 42-4 at 49). However, as indicated by Defendant's corporate representative, this written policy does not apply to the "mailroom" (i.e. "the mailroom doesn't code anything into any systems"), which is where Plaintiff's pre-suit letter was delivered in this action. (Doc. # 42-4 at 56).

For those instances, Defendant has non-written procedures. (Doc. # 34 at 21-22; Doc. # 42-3). Namely, if Defendant receives a letter indicating that a debtor is represented by an attorney with respect to a debt, Defendant sends the letter directly to its dispute resolution

15

department. (Id.). The account is then located in Defendant's computer system by one of the following criteria: debtor name, phone number, social security number, or account reference number. (Id.; Doc. # 42-4 at 63-64). Once located, the account is placed on hold and Defendant ceases and desists all further communication to the debtor until after the litigation or other issues have been resolved. (Doc. # 34 at 22). According to Defendant, it usually takes between 24 and 48 hours from the time Defendant receives the letter to make the necessary notation. (Id.; Doc. # 42-4 at 60).

Here, Defendant admits to having difficulty in locating Plaintiff's account when it received the pre-suit letter on September 27, 2013. (Doc. # 34 at 22-23; Doc. # 42-4 at 58). According to Defendant, this difficulty arose as there were "several" people with Plaintiff's name – Benjamin Alvarado - in its computer system. (Doc. # 34 at 23). Therefore, as the pre-suit letter failed to provide Plaintiff's phone number, account reference number, social security number, or any other personal identifying information, Defendant claims it was unable to quickly search and locate Plaintiff's account. (Id.). Thus, Defendant argues that any delay in making a notation on Plaintiff's account and shutting down collection

activity would have been a bona fide error, not evidence of the reasonableness of Defendant's procedures. (<u>Id.</u> at 22-23).

According to Plaintiff, however, Defendant has failed to produce any documents to substantiate its claim that its employees were trained to follow the above-referenced procedures. (Doc. # 37 at 15). Even if Defendant actually maintained such procedure, Plaintiff argues that such procedures are not reasonably adapted to avoid contacting represented consumers because as followed, in this case, it took Defendant twelve days to make a notation to cease-and-desist collection activity on Plaintiff's account. (<u>Id.</u> at 15-16). To that end, Plaintiff argues that Defendant has offered no evidence of what steps, if any, it took during the twelve days to try to locate Plaintiff's account, or how it ultimately managed to identify Plaintiff's account without requesting additional information. (<u>Id.</u> at 16).

The Court finds that there is sufficient evidence, if credited, to create an issue of fact as to whether Defendant's procedures were "reasonably adapted" to prevent the type of violation alleged here. See <u>Niven v. Nat'l Action Fin. Servs., Inc.</u>, No. 8:07-CV-1326-T-27TBM, 2008 WL 4190961, at *3-4 (M.D. Fla. Sept. 10, 2008)(finding that the evidence was sufficient, if credited, to create an issue of fact on whether

the defendant had reasonable procedures in place to prevent the type of violation alleged). Namely, according to Defendant, it typically takes 24-48 hours upon receipt of a representation letter to locate the account and make the necessary notation. (Doc. # 34 at 22; Doc. # 42-4 at 60). However, here it took twelve days to locate and make the requisite notation on Plaintiff's account. (Doc. # 42-4 at 58). When Defendant's corporate representative was asked whether Defendant had a procedure in place in the event it was only provided the account holder or the debtor's name - and there were more than one debtor with that name - the representative indicated that no procedure existed. (See Id. at 65).

Therefore, based on this evidence, a reasonable juror could conclude that Defendant could have taken further measures to prevent the alleged violation; specifically, when Defendant is provided a representation letter that fails to provide an adequate amount of account or personal identification, but rather, only provides the debtor's first and last name. See Salazar v. MFP, Inc., 847 F. Supp. 2d 1329, 1332-33 (M.D. Fla. 2012)(finding that "[b]ased on this evidence that there were further measures Defendant could have taken to prevent the violation complained of, a jury

18

could conclude that Defendant's procedures were not reasonably adapted to avoid violations of the FDCPA in this situation.").

Accordingly, the Court finds that summary judgment is inappropriate as there remains a genuine issue of material fact regarding the reasonableness of Defendant's procedures. See Niven, 2008 WL 4190961, at *3 ("Defendant's intent and whether the error was bona fide are classic issues of fact, inappropriate for resolution on summary judgment."). For the reasons set forth above, the parties' Motions are denied as to Count I.

### B. Count II – 15 U.S.C. § 1692d(6)

In Count II, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692d(6), which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

#### 1. Liability

According to Defendant, Plaintiff cannot prevail on Count II because the evidence shows that all of Defendant's prerecorded messages contained disclosures required by the FDCPA. (Doc. # 34 at 14). Namely, Defendant contends that each message revealed Defendant's identity, indicated that Defendant was calling with respect to an "important business matter," provided an account reference number, and stated: "This is an attempt by a debt collector to collect a debt and any information received will be used for such purposes." (Id. at 11-12). Defendant argues that any partial prerecorded message Plaintiff received was a result of Plaintiff's voicemail machine's inability to record a full message. (Id. at 16).

Plaintiff does not dispute that Defendant's prerecorded message, when played in its entirety, gives the necessary disclosures. (See Doc. # 44). Rather, Plaintiff contends that on two occasions[1] Defendant left partial prerecorded messages that failed to provide all requisite disclosures. (Doc. # 42-2 at 26-30; Doc. # 44 at 11; see Doc. # 44-3). Plaintiff

---

[1]     According to Plaintiff, Defendant left two partial prerecorded messages on February 28, 2013, and October 3, 2013. (Doc. # 44 at 11; Doc. # 45 at 6).

suggests that these partial messages were the result of Defendant's automated dialer erring and beginning to play the message during Plaintiff's voicemail greeting. (Doc. # 44 at 15).

The Court recognizes Defendant's argument that its previous prerecorded messages received by Plaintiff contained the requisite disclosures. (Doc. # 34 at 14). However, what is relevant to this Court's present analysis are the February 28, 2013, and October 3, 2013, voicemails and whether these voicemails contained the requisite disclosures. See Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1259 (11th Cir. 2014)("The FDCPA is generally described as a strict liability statute. Nevertheless, a debt collector's knowledge and intent can be relevant — for example, a debt collector can avoid liability if it shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.")(internal quotations omitted)).

Here, Plaintiff suggests that only partial recordings were left as a result of Defendant's automated dialer beginning to play the message during Plaintiff's voicemail greeting. (See Doc. ## 37, 44). Conversely, Defendant argues

21

that Plaintiff's voicemail was unable to record the full message. (Doc. ## 34, 42). Thus, as a dispute as to whether Defendant's message contained the requisite disclosures exists, summary judgment on this issue is inappropriate.

## 2. Applicability of Bona Fide Error Defense

Nonetheless, the Court will address the applicability of the bona fide error defense as to Count II. Defendant argues that if partial or cut-off prerecorded voicemails were left on Plaintiff's answering machine, they were clearly unintentional bona fide errors given Defendant's extensive policies and procedures in place to comply with the disclosure requirement of the FDCPA. (Doc. # 34 at 16). The procedures Defendant asserts to have in place to prevent this error can be summarized as follows:

> (1) The script for all Defendant's prerecorded communication specifically identifies Defendant by name and address. (Doc. # 34 at 16; Doc. # 43-3 at 2);

> (2) Defendant plays the full message every time it makes a call. (Doc. # 42-4 at 43);

> (3) Defendant periodically audits the length of its calls being made to debtors. (Doc. # 34 at 17; Doc. # 42-3 at 2; Doc. # 42-4 at 43-44);

(4) Defendant periodically "seeds" accounts.[2] (Doc. # 34 at 17; Doc. # 42-3; Doc. # 42-4 at 44).

However, Defendant argues that there are circumstances beyond its control that may result in a prerecorded message being cut-off in a voicemail. (Doc. # 34 at 16; Doc. # 42-3 at 2). Thus, if all of the FDCPA disclosures were not contained in each voicemail left for Plaintiff, Defendant contends that it was because the message was cut short by circumstances beyond Defendant's control. (Doc. # 34 at 17; Doc. # 42 at 16).

According to Plaintiff, however, Defendant has not established that it maintained procedures reasonably adapted to avoid leaving partial prerecorded messages, which violate the FDCPA. (Doc. # 44 at 13). Plaintiff argues that it is questionable whether the aforementioned procedures were actually maintained by Defendant. (Id. at 14). In this respect, Plaintiff submits that "the procedures are unwritten and Defendant has not produced [evidence] that its employees were trained in these procedures." (Id.). Furthermore,

---

[2]    Seeding occurs when "Defendant sets up an account to place calls to Defendant's own employees, who in turn can listen to the prerecorded voicemail being sent to [debtors] and ensure that the entire message is being played and is in compliance with the disclosure requirements of the FDCPA." (Doc. # 42 at 17).

Plaintiff posits that it is not Defendant that placed the calls and left voicemails on Plaintiff's cellular telephone; rather, it is third-party Dial Connection's "predictive dialer" that placed the calls and left the prerecorded messages. (Id.). To that end, when asked, Defendant's corporate representative was unable to testify as to the procedure Defendant implements to upload or send its prerecorded communication to Dial Connection for use on its calls to debtors, such as Plaintiff. (See Doc. # 42-4 at 45-46).

A reasonable fact finder could conclude that the procedures and policies Defendant had in place were or were not reasonably adapted to avoid the alleged violation at issue. Accordingly, the Court finds that summary judgment is inappropriate as there remains a genuine issue of material fact regarding the reasonableness of Defendant's procedures. Thus, both parties' Motions are denied as to Count II.

## C. Count III – 15 U.S.C. § 1692e(11)

Count III alleges that Defendant violated 15 U.S.C. § 1692e(11), which states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting

the general application of the foregoing, the
following conduct is a violation of this section:

* * *

(11) The failure to disclose in the initial
[written or oral] communication, that the debt
collector is attempting to collect a debt and that
any information obtained will be used for that
purpose, and the failure to disclose in subsequent
communications that the communication is from a
debt collector, except that this paragraph shall
not apply to a formal pleading made in connection
with a legal action.

This Court previously determined that a question of fact

remains as to whether Defendant made the requisite

disclosures on two occasions when it contacted Plaintiff.

Furthermore, the Court has determined that a reasonable juror

could conclude that Defendant's procedures in place to avoid

a violation of the FDCPA were or were not reasonably adapted

to avoid the error, so that the applicability of the bona

fide error defense is better suited for the finder of fact.

Therefore, applying the same analysis from Count II to Count

III, the Court denies Defendant's Motion as to Count III.

   D. **Count IV – Fla. Stat. § 559.72(18)**

Count IV alleges that Defendant violated Fla. Stat. §

559.72 (18), which provides:

In collecting consumer debts, no person shall:

25

* * *

> (18) Communicate with a debtor if the person knows
> that the debtor is represented by an attorney with
> respect to such debt and has knowledge of, or can
> readily ascertain, such attorney's name and
> address, unless the debtor's attorney fails to
> respond within 30 days to a communication from the
> person, unless the debtor's attorney consents to a
> direct communication with the debtor, or unless the
> debtor initiates the communication.

This Court previously determined that a question of fact remains as to whether Defendant had the requisite knowledge that Plaintiff was represented by counsel when it made five phone calls to Plaintiff's cellular telephone after receiving Plaintiff's pre-suit letter.

Furthermore, the FCCPA provides for a bona fide error defense, similar to that found in the FDCPA:

> A person may not be held liable in any action
> brought under this section if the person shows by
> a preponderance of the evidence that the violation
> was not intentional and resulted from a bona fide
> error, notwithstanding the maintenance of
> procedures reasonably adapted to avoid such error.

See Fla. Stat. § 559.77(3); Carsillo v. City of Lake Worth, 995 So. 2d 1118, 1119 (Fla. 4th DCA 2008)("[I]t is well established that if a Florida statute is patterned after a federal law, the Florida statute will be given the same construction as the federal courts give the federal act.").

26

As the Court previously determined, a reasonable juror could conclude that Defendant's procedures were or were not reasonably adapted to avoid a violation of the FDCPA; specifically, 15 U.S.C. § 1692c(a)(2), and as a result, the determination as to whether the bona fide error defense applied under the present circumstances is better suited for the finder of fact. Therefore, applying the same analysis as set forth in Count I to Count IV, the Court denies both parties' Motions as to Count IV.

### E. Count V – 47 U.S.C. § 227 (b)(1)(A)(iii)

In Count V, Plaintiff argues that Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii), which states:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States —

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice —

\* \* \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized

> mobile radio service, or other radio common carrier
> service, or any service for which the called party
> is charged for the call.

The parties agree that none of the relevant telephone calls were made for emergency purposes and all the telephone calls were made by Dial Connection's predictive dialer. (Doc. # 37 at 20; Doc. # 42-4 at 36).

As set forth in <u>Johnson  v.  Credit  Protection Association, L.P.</u>, No. 11-80604-CIV, 2012 WL 5875605, at *3-4 (S.D. Fla. Nov. 20, 2012):

> With respect to the TCPA, the Federal
> Communications Commission ("FCC") has issued a
> declaratory ruling clarifying that autodialed and
> prerecorded message calls to wireless numbers that
> are provided by the called party to a creditor in
> connection with an existing debt are permissible as
> calls made with the "prior express consent" of the
> called party. This order states, in part, as
> follows:
>
> > Because we find that autodialed and prerecorded
> > message calls to wireless numbers provided by
> > the called party in connection with an existing
> > debt are made with the "prior express consent"
> > of the called party, we clarify that such calls
> > are permissible. We conclude that the provision
> > of a cell phone number to a creditor, e.g., as
> > part of a credit application, reasonably
> > evidences prior express consent by the cell
> > phone subscriber to be contacted at that number
> > regarding the debt.

* * *

> Calls placed by a third party collector on
> behalf of that creditor are treated as if the
> creditor itself placed the call.

With respect to the issue of consent, the FCC has
stated the following:

> [P]ersons who knowingly release their phone
> numbers have in effect given their invitation
> or permission to be called at the number which
> they have given, absent instructions to the
> contrary. Hence, telemarketers will not violate
> our rules by calling a number which was
> provided as one at which the called party
> wishes to be reached.

(internal citations omitted).

Here, when Plaintiff set up his Bright House account, he
provided Bright House with his cellular telephone number.
(Doc. # 34-2 at 2; Doc. # 42-2 at 13; Doc. # 42-4 at 40).
Plaintiff signed a work order, which assigned his cellular
telephone number as the number associated with his account.
(Doc. # 42-4 at 53, 69). Bright House then sent Plaintiff's
unpaid account to Defendant for collections and provided
Defendant with Plaintiff's cellular telephone number as the
contact number on the account. (Doc. # 42-3 at 1).

The record is devoid of any evidence that Plaintiff
provided Bright House with "instructions to the contrary."
(See Doc. # 34-2 at 2). In fact, not only did Plaintiff admit

that he has never had any contact with Defendant whatsoever
(Doc. # 34-1 at 2; Doc. # 42-2 at 18-21), his testimony fails
to demonstrate that he affirmatively provided his cellular
telephone number for installation purposes only:

> Q: Now, when you gave them your cell phone, it
> was – you said it was for the installation
> only?
>
> A: Uh-huh.
>
> Q: Now who did you tell that to?
>
> A: I didn't say it only.  I just said I gave
> it to them. They asked me, what number could
> you provide for the install.
>
> * * *
>
> Q: Okay. But when you gave them your cell phone
> number, you didn't say specifically, this is
> only for a limited purpose, you just gave them
> your cell phone number when they asked for it?
>
> A: Well, they asked me – they didn't ask me
> what it was for. I mean they asked for my cell
> phone number to do an install.
>
> Q: And you gave it to them?
>
> A: I gave it to them, yes.

(Doc. # 42-2 at 14).

Without an affirmative statement by Plaintiff that he
advised Bright House that it could *only* use his cellular

telephone number for installation purposes, Plaintiff is not entitled to claim he gave "instructions to the contrary." See Johnson, 2012 WL 5875605, at *3-4 (finding the record devoid of any evidence that Plaintiff provided "instructions to the contrary."); Cavero v. Franklin Collection Serv., Inc., No. 11-22630-CIV, 2012 WL 279448, at * 3-4 (S.D. Fla. Jan. 31, 2012)(finding no issue of fact as to consent when the plaintiff gave his cellular telephone number to his telephone and internet provider). Therefore, the Court finds that Plaintiff provided consent to Bright House – and Dial Connection – to call his cellular telephone number.

Regardless, Plaintiff contends that in the event consent was given, it was revoked upon Defendant's receipt of the pre-suit letter by Plaintiff's attorney. (Doc. # 44 at 4-5)(citing Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014)). Plaintiff argues that pursuant to the FDCPA and FCCPA, when Defendant received the pre-suit letter, it was "legally prohibited from communicating with Plaintiff." (Id. at 5). Thus, "by operation of law any consent Defendant had to call Plaintiff was revoked." (Id.). Furthermore, Plaintiff argues that the Eleventh Circuit has determined that issues of consent under the TCPA are governed by common law. (Id.)(citing Osario, 746 F. 3d at 1252-53). In

Osario, the Court recognized that "consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." (Id.)(citing Restatement (Second) of Torts § 892A (1979)). Plaintiff submits that the pre-suit letter, which threatened to sue Defendant, "unequivocally" manifested his unwillingness to consent to Defendant's conduct. (Id.). Accordingly, upon receipt of the pre-suit letter, Plaintiff argues that Defendant knew or had reason to know that Plaintiff was no longer willing to consent to Defendant's telephone calls. (Id.).

However, Defendant argues that the pre-suit letter fails to revoke or limit consent to call Plaintiff's cell phone as it does not explicitly revoke consent to call Plaintiff's cell phone, ask Defendant to stop calling Plaintiff's cellular telephone, and is devoid of almost all personal identifying information. (Doc. # 34 at 11). Furthermore, for the reasons set forth above, Defendant argues that the pre-suit letter did not provide Defendant with actual knowledge that Plaintiff was represented by an attorney with respect to the account. (Id.; Doc. # 42 at 20).

A review of the parties' arguments and the record before the Court demonstrates that there remains a question of fact

as to whether Plaintiff effectively revoked the prior consent given to Defendant. Plaintiff contends that he revoked any consent when his attorney sent Defendant the pre-suit letter. (See Doc. ## 37, 44). Defendant, however, argues that the pre-suit letter was insufficient to revoke Plaintiff's prior consent. (See Doc. ## 34, 42). This is exactly the kind of factual dispute that cannot properly be resolved on summary judgment. Thus, the parties' Motions are denied as to Count V.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Credit Protection Association, L.P.'s Amended Motion for Summary Judgment (Doc. # 34) is **DENIED**.

(2) Plaintiff Benjamin Alvarado's Motion for Partial Summary Judgment (Doc. # 37) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of April, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record

33